COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                               NO.
02-09-00165-CR

 

 

CLAUDE GEORGE BAILEY                                                                APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

 

                                                       ------------

 

              FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------








A jury convicted
Appellant Claude George Bailey of six counts of aggravated sexual assault of a
child under fourteen years of age and one count of
indecency with a child, and the trial court sentenced him to life imprisonment
on each count.  Appellant brings thirteen
points challenging the sufficiency of the evidence to support the jury=s verdicts as to
all counts.  Because we hold that the
evidence is sufficient to support Appellant=s six convictions
for aggravated sexual assault of a child, we affirm the trial court=s judgments on
those counts.  Because we hold that the
evidence supporting Appellant=s conviction for
indecency with a child by contact is the same as that supporting one of the
aggravated sexual assault convictions based on digital penetration, we reverse
the trial court=s judgment on the seventh count, set aside
the indecency with a child conviction and sentence, and enter a judgment of
acquittal on that count. 

Brief Facts

At the time of his
arrest, Appellant was married to Amparo Bailey.  Amparo had children
from previous relationships, including her daughter, C.S., the complainant, who
was thirteen years old at the time of Appellant=s arrest.

At trial, Amparo testified that on March 28, 2008, C.S. and Appellant
brought her dinner to her at work, and Appellant urged Amparo
to come home early because she looked tired. 
After they left and she ate dinner, Amparo
decided that she would go home early. 
When she arrived home, the home was dark.  She turned on the lights and then heard C.S.
run to the bathroom.  Amparo
looked in the children=s bedroom and saw Appellant standing by
the window.  Appellant told her that he
was looking out the window for her.  Amparo testified that after she turned on the light, she
saw a bulge in Appellant=s pants, Ahis zipper was
halfway zipped, and he was sweating like crazy.@








She spoke with
C.S., who stated that Appellant had been trying to have sex with her.  Amparo told
Appellant to leave and then called the police. 
C.S. was taken to Cook Children=s Hospital, where
she underwent a sexual assault examination.

At trial, C.S.
testified that Appellant had first touched her Avagina [sic]@[2] with his tongue
when she was either ten or eleven years old. 
She stated that this conduct happened again when she was eleven or
twelve years old, and again when she returned after living with her father in
Florida part of the summer and fall of either 2006 or 2007.  She also stated that Appellant had stuck his
fingers inside her vagina, that on one occasion, he had caused his penis to make
contact with and penetrate the labia of her genitals while trying to penetrate
her vagina, and that he tried to do this on other occasions.  In response to both direct and
cross-examination, she explained what had occurred in each of the several
different places she had lived with Appellant, her mother, and her
sisters.  She emphasized the fact that
the sexual abuse had occurred many times. 
When asked if anything had come out of Appellant=s penis, she said
that something white had come out and had gotten on her legs but not on the
night on which her mother discovered them.

C.S. also admitted
that she had gotten in trouble at school not long before she left for Florida
to be with her father and that she had gotten in trouble in Florida.








The senior
forensic analyst for the Tarrant County Medical Examiner=s Office conducted
tests on items collected by the police from Appellant=s home and on the
swabs taken in C.S.=s sexual assault
examination.  None of the samples from
the sexual assault examination tested positive for the presence of semen.  The blanket collected by the police from the
children=s bedroom,
however, did test positive for the presence of semen.

Appellant does not
challenge the sexual offender notice.

Standard of Review

After the parties
briefed this case on appeal, the Texas Court of Criminal Appeals held Athat there is no
meaningful distinction between a Clewis factual‑sufficiency standard and a Jackson v.
Virginia legal‑sufficiency standardA and that

the Jackson v. Virginia standard is the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense that the State is required to
prove beyond a reasonable doubt.  All
other cases to the contrary, including Clewis,
are overruled.[3]


 








Accordingly, we
apply the same standard of review to all of Appellant=s sufficiency
complaints.  In reviewing the sufficiency
of the evidence to support a conviction, we view all of the evidence in the
light most favorable to the prosecution in order to determine whether any
rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.[4]

This standard
gives full play to the responsibility of the trier of
fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.[5]  The trier of fact
is the sole judge of the weight and credibility of the evidence.[6]  Thus, when performing a sufficiency review,
we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.[7]  Instead, we Adetermine whether
the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@[8]  We must presume that the factfinder
resolved any conflicting inferences in favor of the prosecution and defer to
that resolution.[9]








The sufficiency of
the evidence should be measured by the elements of the offense as defined by
the hypothetically correct jury charge for the case, not the charge actually
given.[10]  Such a charge is one that accurately sets out
the law, is authorized by the indictment, does not unnecessarily restrict the
State=s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.[11]


Analysis

The State candidly
admits that sex offenses are nature-of-conduct crimes rather than
result-of-conduct crimes and that they therefore require proof of the
additional element of Amanner and means.@[12]  Consequently, as the State explains, AIn this case, each
of the indictment=s seven counts alleged a specific manner
and means . . . [that] are thus necessary elements of the hypothetically
correct jury charges [HCJCs in table below] to be used by this Court in
evaluating the appellant=s sufficiency challenges.@  The State has provided a helpful table
summarizing the elements of each count it was required to prove.  We duplicate and incorporate that table here:


 
 
 Elements Common To All Aggravated Sexual Assault
 HCJCs
 
 
 
 
  
 
 
 
 
 (1) The appellant,
 
 
 
 
 (2) intentionally or knowingly,
 
 
 
 
 (3) caused,
 
 
 
 
 . . . 
 
 
 
 
 . . . 
 
 
 
 
 (6) and C.S. was younger than 14
 years of age and
 
 
 
 
 (7) was
 not the appellant=s spouse.
 
 
 
 
  
 
 


 


 
 
 Elements Unique To Each
 Aggravated Sexual Assault HCJC
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
 Type of Conduct Caused
 
 
 On or About
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
 Count 1:
 
 
 (4) C.S.=s sexual organ to contact
 appellant=s sexual organ
 
 
 (5) 03-28-08
 
 
 
 
 Count 2:
 
 
 (4) C.S.=s sexual organ to contact
 appellant=s mouth
 
 
 (5) 12-30-07
 
 
 
 
 Count 3:
 
 
 (4) penetration of C.S=s sexual organ using appellant=s finger
 
 
 (5) 01-01-06
 
 
 
 
 Count 4:
 
 
 (4) C.S=s sexual organ to contact
 appellant=s sexual organ
 
 
 (5) 12-01-07
 
 
 
 
 Count 5:
 
 
 (4) C.S.=s sexual organ to contact
 appellant=s mouth
 
 
 (5) 01-01-06
 
 
 
 
 Count 6:
 
 
 (4) penetration of C.S.=s sexual organ using appellant=s finger
 
 
 (5) 01-01-07
 
 
 
 
  
 
 
  
 
 
  
 
 


 




 
 
 HCJC Elements for Count 7:  Indecency
 
 
 
 
  
 
 
  
 
 
 
 
 (1) the
 appellant
 
 
 (5) with C.S.,
 
 
 
 
 (2) with the
 intent to gratify his sexual desire
 
 
 (6) by touching
 C.S.=s sexual organ,
 
 
 
 
 (3) engaged,
 
 
 (7) on or about
 March 15, 2008, and
 
 
 
 
 (4) in sexual
 contact,
 
 
 (8) C.S. was
 under 17 years of age
 
 
 
 
  
 
 
  
 
 




C.S. testified
that she was younger than fourteen years old at the time of these incidents and
that she was not Appellant=s spouse.  She also testified that she lived with her
father in Florida either in the summer and part of the fall in 2006 or during
the same period in 2007.  The State
explains that at trial, it attempted to divide the offenses into the
pre-Florida offenses and the post-Florida offenses.

Oral-Genital
Contact








The second and
fifth counts of the indictment allege oral-genital contact; that is, they
allege that Appellant committed aggravated sexual assault by causing C.S.=s female sexual
organ to contact his mouth on or about December 30, 2007, and January 1, 2006,
respectively.  Appellant challenges the
sufficiency of the evidence to support his convictions under these counts in
his first four points.  Specifically, he
contends that the record does not remove reasonable doubt and that it contains
only vague and sometimes contradictory allegations.  He relies on conflicts within C.S.=s testimony about when the sexual assaults
began and her admission that she has confused some of the incidents.  He also contends that she offered no
specifics or details and that her testimony lacks corroboration.

The State concedes
that C.S. did not testify that the aggravated sexual assaults alleged in Count
Two and Count Five happened on a specific date. 
But the State is not required to prove the specific date when the
indictment alleges an Aon or about@ date.[13]  The law clearly permits the State to allege
that an offense occurred on or about a specific date.[14]  The proof is sufficient if it proves the
offense occurred on a date anterior to the presentment of the indictment but
within the statutory limitations period.[15]  As this court has previously explained, 








This great latitude given to the State has
a rational basis when the victim is a young child.  A young child may make no outcry for several
months or even years.  When outcry is
finally made, the child often is unable to establish a specific date of the
offense but must pinpoint the event by describing it in terms of significant
holidays, a particular residence, or the circumstances of the offense itself.[16]


As Appellant concedes, a child complainant=s testimony
standing alone can be sufficient to support an aggravated sexual assault
conviction.[17]

C.S. testified
that when she was ten or eleven years old and the family lived in a trailer
home in Fort Worth, Appellant Aate [her] up.@ C.S. explained
that he touched A[her] vagina [sic] . . . [w]ith his tongue@ and that his
tongue went inside her.  Amparo had already testified that the family had lived in a
mobile home in Tarrant County.

C.S. testified that
the family moved from the trailer home to a house on Hilldale
in Fort Worth, Texas, when she was eleven or twelve years old and that
Appellant Atried to do the same thing[C]. . . eat [her]@ more than
once.  Amparo
had already testified that the house was in Fort Worth, Tarrant County, Texas.








C.S. lived with
her family on Hilldale Road before she moved to
Florida.  C.S.  testified that after she returned from
Florida and was again living with her mother and Appellant in an apartment,
Appellant Atried to do [the] same thing he did before
[she] left, tr[ied] to
stick his tongue on [her] vagina [sic]@ again.  Amparo had already
testified that the family lived in the Oakwood Village Apartments in Hurst,
Tarrant County, after leaving the Hilldale house.

Accordingly,
viewing all of the evidence in the light most favorable to the prosecution, we
hold that the evidence is sufficient to support Appellant=s convictions on
these two counts.  We overrule Appellant=s first four
points.

GenitalBGenital Contact

In his eleventh
and twelfth points, Appellant challenges the sufficiency of the evidence of
genitalBgenital contact
charged in the indictment=s fourth count, alleged to have occurred
on or about December 1, 2007.  In his
thirteenth point, he challenges the sufficiency of the evidence of
genital-genital contact alleged in the first count to have occurred on or about
March 28, 2008.  Again, he complains that
the evidence lacks specificity and corroboration by physical evidence and that
the evidence is conflicting.








C.S. testified
that Appellant penetrated her labia with his penis at the trailer home after
the first time he touched her female sexual organ with his tongue.  She also testified that he later Atried to stick his
penis in [her] vagina@ more than once when they lived at the Hilldale house, both before and after she lived in
Florida.  In response to Appellant=s contention that
C.S. testified that he Atried@ to put his penis
in her vagina but not that he succeeded, we note that the offense of sexual
assault no longer requires penetration of the vagina, merely the sexual organ,
which includes the vulva and labia.[18]


C.S. testified
that in March 2008, when she and Appellant were alone in the Oakwood Village
Apartments, he took off her clothes and tried to stick his Aarea@ in her Aarea.@  She explained that his Aarea@ was used to make
babies and use the rest room and her Aarea@ was for using the
restroom and clarified that his Aarea@ was his penis and
hers was her Avagina.@  She testified that Appellant=s penis penetrated
her labia.

On
cross-examination, C.S. testified that she remembered telling the CPS
interviewer that Appellant Awould try to stick
it in and he would think it was [her] private area, but it was really [her] leg
because he was dumb[.]@ 
C.S. also remembered telling the CPS interviewer that Ahe never really
did it to [her] as far as his penis contacting [her] vagina or penetrating
[her] vagina because it was really [her] leg and he was just dumb[.]@  On redirect, C.S. testified both that she was
not sure whether Appellant=s penis had
contacted her female sexual organ that night and that she was sure that his
penis had contacted her female sexual organ. 
She explained that while his penis did not enter the opening of her
vagina, it did enter her labia.  The
sexual assault nurse at Cook Children=s testified that
C.S. told her,








[I]t
was time to take a bath, and he went in his room, and [C.S.] was looking for
something to dry [her]self with, and he told [her] to get in theCon the bed, and he got on top of
[her] trying to force his way in, but [she] shut [her] legs.  He got up because [she] wouldn=t let him, and then [C.S.] got up
and tripped and fell on [her] stomach, and then he got on top of [C.S.] and
tried to put it in [her] back, but [she] wouldn=t let him, and then [they] heard [Amparo], and he got up, and [C.S.] went in the bathroom.

 

When the nurse asked C.S. specifically
about vaginal contact, C.S. told her Athat maybe it went
in, she wasn=t sure because she
was fighting him.@ 
But later on in the conversation C.S. said, A[Y]eah, I think it did go in.@  The nurse testified that C.S. also told her
that Appellant first sexually assaulted C.S. when she was around twelve years
old and that it had happened multiple times.

Accordingly,
viewing all the evidence in the light most favorable to the prosecution, we
hold that the evidence is sufficient to support Appellant=s two convictions
for genitalBgenital contact.  We overrule Appellant=s eleventh,
twelfth, and thirteenth points.

Digital
Penetration and Indecency With a Child








In his fifth and
sixth points, Appellant argues that the evidence is  insufficient to support his conviction
under the indictment=s third count, alleging digital
penetration on or about January 1, 2006. 
His seventh and eighth points challenge the sufficiency of the evidence
to support his conviction under the indictment=s sixth count,
alleging digital penetration on or about January 1, 2007.  C.S. testified that Appellant stuck his
fingers inside her labia at the Hilldale house and at
the stadium when she and Appellant were working at a concession stand there in
2006 or 2007.  Amparo
had already testified that Appellant worked in a football stadium while they
were living on Hilldale or in the apartment and that
he took the children with him sometimes. 
On cross-examination, C.S. admitted that she did not tell the police or
the Cook Children=s nurse about anything happening at the
stadium but insisted that she told the CPS investigator.

By describing
events that took place in two separate places, both in 2006 or 2007, C.S. has
described two separate offenses.  Accordingly,
viewing all the evidence in the light most favorable to the prosecution, we
hold that the evidence is sufficient to support Appellant=s two convictions
for digital penetration.

But as Appellant
points out, the State elected at trial to rely on the incident C.S. described
as occurring at the stadiumCthe incident used
to support the digital penetration conviction on Count SixCfor proving the
indictment=s seventh count, which alleges that on or
about March 15, 2008, Appellant committed indecency with a child by touching
C.S.=s female sexual
organ.  That is, the State elected to
rely on Aa time that [C.S.]
was working the concession stand and [Appellant] touched her genitals in the
concession stand [with] . . . [h]is hand@ to seek conviction
on Count Seven.  The State=s election was
presented to the jury in the jury charge:

Now, therefore, if you find and believe from the evidence
beyond a reasonable doubt, that [Appellant], in Tarrant County, Texas, on or
about the 15th day of March, 2008, did then and there intentionally,
with the intent to arouse or gratify [his] sexual desire . . . , engage in
sexual contact while working at the concession stand at the stadium by touching
the female sexual organ of [C.S] . . . with his hand, as charged in Count Seven
of the Indictment, then you will find [Appellant] guilty of indecency with a
child by contact as charged in Count Seven of the Indictment.

 








Unless you so find and believe from the evidence beyond a
reasonable doubt, or if you have a reasonable doubt thereof, you will acquit
[Appellant] of indecency with a child by contact as charged in Count Seven of
the Indictment and say by your verdict, ANot Guilty.@

 

Consequently, the State=s argument that
the evidence is sufficient to support an indecency conviction for oral-genital
contact occurring at the mobile home is irrelevant.[19]

Our review of the
record yields evidence of only two instances of digital-genital contact or
penetration, and there is no evidence that the other multiple aggravated sexual
assaults to which C.S. testified generally included digital-genital contact or
penetration, nor is there any evidence that digital-genital contact occurred at
the stadium except during the digital-genital penetration for which Appellant
was convicted in Count Six. 








Because under
these facts, indecency with a child by contact with her female sexual organ
with the hand is a lesser included offense of digital penetration of the female
sexual organ occurring in the same incident, we overrule Appellant=s fifth through
eight points, which challenge the sufficiency of the evidence supporting the
aggravated sexual assault convictions based on digital penetration, and sustain
his ninth point, which challenges the sufficiency of the evidence supporting
his conviction for indecency with a child by contact.[20]  We reverse the trial court=s judgment on the
seventh count, set aside Appellant=s conviction and
sentence for indecency with a child, and enter a judgment of acquittal on that
count.[21]  Due to our disposition of his ninth point, we
do not reach Appellant=s tenth point.[22]

Conclusion

Having overruled
Appellant=s eleven points challenging his six
convictions for aggravated sexual assault of a child, we affirm the trial court=s judgments on
those counts.  Having sustained Appellant=s dispositive
point challenging his conviction for indecency with a child by contact, we
reverse the trial court=s judgment on the seventh count, set aside
Appellant=s conviction and sentence for indecency
with a child, and render judgment of acquittal on that count.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 28, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tyler v. State, 950 S.W.2d 787, 789 (Tex. App.CFort Worth 1997, no pet.) (pointing out the anatomically correct usage of the word vagina).





[3]Brooks v.
State, No. PD-0210-09, 2010 WL 3894613, at
*14 (Tex. Crim. App. Oct. 6, 2010).





[4]Jackson v.
Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772,
778 (Tex. Crim. App. 2007).





[5]Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778.





[6]See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v.
State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 2075 (2009).





[7]Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999), cert. denied, 529 U.S. 1131 (2000).





[8]Hooper v.
State, 214 S.W.3d
9, 16B17 (Tex. Crim. App. 2007).





[9]Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.





[10]Hardy v. State, 281 S.W.3d 414, 421 (Tex. Crim.
App. 2009); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).





[11]Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim.
App. 2001); Malik, 953 S.W.2d at 240.





[12]Huffman v. State, 267 S.W.3d 902, 906 (Tex. Crim.
App. 2008) (discussing Vick v. State, 991 S.W.2d 830, 832 (Tex. Crim.
App. 1999)).





[13]Sledge v.
State, 953 S.W.2d
253, 255, 259 (Tex. Crim. App. 1997).





[14]Id. at 255.





[15]Tex. Code Crim.
Proc. Ann. art.
21.02(6) (Vernon 2009); see also id. art.
12.01(1)(B) (Vernon 2005) (providing that there is no
limitation on offenses of aggravated sexual assault of a child under fourteen
years of age); Tex. Penal Code Ann. 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2010)
(providing elements of offense).





[16]Sledge v. State, 903 S.W.2d 105, 107 (Tex. App.CFort Worth 1995), aff=d,
953 S.W.2d 253 (Tex. Crim. App. 1997).





[17]Tex. Code Crim.
Proc. Ann. art.
38.07(a), (b)(1) (Vernon 2005); Garcia v. State,
563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978).





[18]Steadman v. State, 280 S.W.3d 242, 247B48 (Tex. Crim. App. 2009); Karnes
v. State, 873 S.W.2d 92, 96 (Tex. App.CDallas 1994, no pet.).





[19]See Phillips v. State, 193 S.W.3d 904, 909 (Tex. Crim.
App. 2006) (explaining that requiring the State to elect Aforces it to formally differentiate
the specific evidence upon which it will rely as proof of the charged offense
from evidence of other offenses or misconduct . . .@). 





[20]See Bigon
v. State, 252
S.W.3d 360, 373 (Tex. Crim. App. 2008) (retaining first-degree felony as Amost serious offense@ over second-degree felony with
identical sentence); Ex parte Pruitt, 233 S.W.3d 338, 348 (Tex. Crim.
App. 2007) (holding genital contact subsumed within alleged incident of
penetration is lesser included offense of penetration); Patterson v. State,
152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding penile contact with genitals
in course of penile penetration subsumed).





[21]See Bigon, 252 S.W.3d at
373.





[22]See Tex. R. App. P. 47.1.