IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-603-06






EX PARTE ALFREDO PRUITT, Appellant







ON STATE'S PETITION FOR DISCRETIONARY REVIEW 


FROM THE THIRD COURT OF APPEALS

CALDWELL COUNTY





 Hervey, J., delivered the opinion of the unanimous Court.


O P I N I O N


 A jury acquitted appellant of one count of sexual assault and another count of aggravated sexual
assault of the same child ( "complainant"), who was appellant's step-daughter. Appellant was subsequently
charged in a two-count indictment with sexual assault of the complainant. The issue in this case is whether
the offenses charged in this subsequent indictment are jeopardy-barred. We hold that double-jeopardy
principles prohibit prosecution for any of the offenses that were incidental to or "subsumed" within the
offenses for which appellant was acquitted in the prior trial. 

 In April 2001, appellant was charged in a two-count indictment (cause number 2001-065) with
sexual assault (count 1) and aggravated sexual assault (count 2) of the complainant. Count 1 of this
indictment alleged that appellant penetrated the complainant's sexual organ with his penis "on or about"
August 15, 2000, when she was younger than 17 years of age. Count 2 of this indictment alleged that
appellant penetrated the complainant's sexual organ with his penis "on or about" June 15, 1997, when she
was younger than 14 years of age.

 Appellant was tried on this 2001 indictment before a jury in April 2002. Appellant testified and
denied having any sexual contact with the complainant. The complainant, who was born on July 7, 1984,
testified that appellant first penetrated her sexual organ with his penis some time after her eighth-grade
school year and before her fourteenth birthday in the summer of 1998. She testified that appellant last
penetrated her sexual organ with his penis in August or September of 2000 when she was sixteen years
old. The complainant also testified that appellant penetrated her sexual organ with his penis "at least once
a month" between the first incident of penetration in the summer of 1998 and the last incident of penetration
in August or September of 2000.

 Q. [STATE]: All right. Now, let's visit a bit about how many times it happened from the
summer after your eighth grade year until the beginning of the school year 2000. Do you
recall how many times?


 A. [COMPLAINANT]: No, I don't. I do remember it happening at least once a month.


 The complainant testified that these incidents occurred in the family home with the first incident in
the summer of 1998 occurring in her mother's bedroom. She testified that the other incidents occurred in
the bathroom.

 Q. [STATE]: Okay. Now, I want to talk to you about the first time the defendant touched
you sexually, okay?


 A. [COMPLAINANT]: Yes. Okay.


 Q. Where did it occur in your house?


 A. The first time, it occurred in the bedroom.


 Q. Whose bedroom?


 A. My mom's bedroom.

* * *

 Q. Okay. On this incident, when he touched you the summer, but before your 14th
birthday, tell me what he did in the bedroom.


 A. It started out the way he was looking at me and then he asked me if I wanted to go
further. And I didn't say yes and I didn't say no either. So we got on the bed and he just
started taking my clothes off. And it happened. We had sex.

* * *

 Q. On that occasion, did his penis go inside your vagina or what we call your female sexual
organ?


 A. Yes, sir, he did.

* * *

 Q. Was there ever a time that he had vaginal sex with you, but he was behind you?


 A. Yes, sir.


 Q. Did that happen more than once?


 A. Yes. That's how it happened most of the time. It was just the first time that it
happened laying down.

* * *

 Q. Where did this last sexual incident occur?


 A. In-in the bathroom.

* * *

 Q. Tell me what happened on this incident?


 A. It was like any other time that he would ask; we would go into the restroom. I would
take my pants down and then he would do the same with his. And he would put his
condom on and I would bend over and he would enter.


 Q. Okay. Where on your body did the defendant enter?


 A. In my vagina.


 The complainant testified on cross-examination that her elderly, wheel-chair-bound grandmother
moved into the house "about two years" after the incidents began in the summer of 1998 and that her
grandmother "was pretty much a continuous presence there after she moved in." The complainant testified
that the incidents of penetration occurred in the bathroom when "nobody would be home" and that they
occurred in the "living room" when her grandmother was home.

 Q. [DEFENSE]: Okay. So are you saying that, to your knowledge, over the three-year
time period, no one ever saw you and [appellant] go into the bathroom at the same time?


 A. [COMPLAINANT]: Whenever that would happen, nobody would be home. The only
persons that would be home would be my brother and my little sister. They would be
either outside or . . .


 Q. What about your grandmother?


 A. My grandmother, when my grandmother was there, what we did was move to the living
room.


 Q. So you would do it in the living room?


 A. Yes, sir.


 Q. You didn't mention that earlier.


 A. No, sir, I didn't.


 Q. It didn't seem important to mention that?


 A. Yeah, it was important. I just didn't remember that.[ (1)]


 The State made no formal election of which incidents of penetration it would rely upon for
conviction. The State's jury arguments focused on the first incident of penetration in the summer of 1998
and the last incident of penetration in August or September of 2000. (2)

 [STATE]: The jury charge: It contains all of the law that you're going to need to decide the
disputed factual issues. We like to call it your road map because it contains a pretty good
chart of the law. Occasionally, you may have a question that comes up in jury
deliberations. Judge Ramsay has visited with you by reading the charge about questions
that come up. The first place you ought to begin to look is the jury charge because more
than likely the answer is in there. Now, it's not that long. Today it's only about 10 pages,
and two of them are verdicts.


 The instructions are really pretty, pretty basic and common sense. They're easy to read. 
I'll explain them to you. Here's what the verdict form looks like: The first verdict form is
Count 1, Count 1 offense, the year 2001 offense. It has to be a unanimous verdict,
everyone has to agree beyond a reasonable doubt. If that is your verdict, the foreman
signs right here. The bottom form is not guilty.


 Count 2, here's what it looks like: This is the aggravated sexual assault allegation when she
was younger than 14, the first time, the summer of eighth-grade year. The top form is
guilty beyond a reasonable doubt, the bottom form is not guilty.


 There is an on-or-about instruction here. Remember when we talked about that, the
statute of limitations rule? Do you remember that? ". . . the State is not required to prove
the exact date of the alleged crime in the indictment, but may prove the offense, if any, to
have been committed at any time prior to the presentment of the indictment" --


 Well, you know, before you got here on Monday the indictment was returned by the grand
jury. That's why you came. There's a trial on that indictment.


 - "so long as said indictment is presented within ten years from the 18th birthday of the
victim of the offense."


 Well, [the complainant's] not going to be 18 until this summer, right? So the statute of
limitations is 28 years of age from her July '02 birthday. So we're well within the statute
of limitations for both-for both offenses. That should not be a problem, but that is the law
that you were sworn to uphold by your oath. Follow it. Follow it.


 Okay. Now, what I would like to do at this point is to talk about the elements of the
indictment that are not in dispute, that neither-neither side can dispute so that we can focus
our argument time, our valuable argument time, on the issues that are in dispute.


 Identity: He says he didn't do it. Okay. So identity is an issue that's being fought about.


 The dates of the offenses: Not seriously in dispute when you use the on-or-about charge
that the Judge gives you, the statute of limitations period.

* * *

 The name of the victim: [The complainant], that's not in dispute, the fact that she's been
properly identified by the evidence.


 That she was, the summer of her eighth grade year, just short of 14 years of age. It
happened after school was out, she told you eighth grade year, before her birthday, her
14th birthday, July of 1998. We've got a chart there. You remember us drawing the
chart. That's the count 2 offense. That's the-the-the aggravated sexual assault count,
younger than 14.


 The first count, the date, not this school year, but last school year, sometime around
August or September when school was getting started in the year 2001. Then the outcry
is-the outcry is in 2000, in November, the date is not in dispute. Look again at the chart
and remember the testimony.

 

 The State also argued that the complainant's "testimony, standing alone, if you believe it beyond
a reasonable doubt, is enough to sustain the allegations of Count 1 and Count 2." The defense closing jury
arguments did not respond to just the first incident of penetration in the summer of 1998 and the last
incident of penetration in August or September of 2000; instead, it addressed all of the alleged conduct.

 The jury was instructed to convict appellant of the count 1 offense if it found, among other things,
that appellant committed the offense "on or about" August 15, 2000. The jury was instructed to convict
appellant of the count 2 offense if it found, among other things, that appellant committed the offense "on or
about" June 15, 1997. The jury was also instructed that the State was "not required to prove the exact
date alleged in the indictment, but may prove the offense, if any, to have been committed at any time prior
to the presentment of the indictment, so long as said indictment is presented within ten years from the 18th
birthday of the victim of the offense." (3)
 The jury acquitted appellant of both counts.

 In May 2003, appellant was charged in the present case in a two-count indictment (cause number
2003-104) with sexual assault of the same complainant when she was younger than 17 years of age. Count
1 alleged that appellant committed the offense "on or about" June 15, 1999. Count 2 alleged that appellant
committed the offense "on or about" July 15, 1999. Paragraph 1 of each count alleged that appellant
committed the offense by causing the complainant's sexual organ to contact his sexual organ. Paragraph
2 of each count alleged that appellant committed the offense by penetrating the complainant's sexual organ
with his penis.

 Appellant filed a pretrial writ of habeas corpus claiming that this prosecution is jeopardy-barred
because of the prior acquittal. The trial court conducted two hearings on this pretrial writ. Appellant
argued at the first hearing that "the dates that [the complainant] testified to were within the time period that
he was at risk in the first trial" because of the "on or about" language in the jury charge.

 [DEFENSE]: And here, Your Honor, if you look at both indictments, the elements match,
the manner and means match. The victim has previously testified at length about just about
every possible way he could have sexually assaulted her. The jury was instructed on or
about, that at anytime, basically, from the time the child was born until 10 years after the
child turned 18, part of the presentment of the indictment. In this case, Your Honor, it is
clear that the dates that she testified to were within the time period that he was at risk in
the first trial.


 The jury came back with a finding of not guilty. I think this is just a crystal clear case that
the prior prosecutor was overzealous, at best, vindictive, at the least, in losing this case,
and that this is a type of case that requires this Court to, quite simply, grant the writ and
release him from this particular case, because the manner and means are the same, time
period is the same, the testimony was broad and far-reaching. And the jury was instructed
it could consider anything prior to the date of the indictment. And, therefore, Your Honor,
I believe you need to grant the writ and also grant the motion.


 The State responded that the "on or about" language in the jury charge in the prior trial was not
dispositive because "discussions regarding the charge and closing argument" in that trial indicated that the
State was "only relying on the dates named in the indictment."

 [STATE]: More relevant, I think, than stuff during testimony during the evidentiary phase
would be discussions regarding the charge and closing argument, wherein the State said
we are only relying on the dates named in the indictment. On or about, this is statutory
language because we can't tell you that it really happened November 17th, or maybe it was
November 18th or maybe it was November 20th. But on or about covers us for that. So
you would need that in the charge. So I don't think that, in and of itself, is dispositive.


 At the second hearing on appellant's pretrial writ, appellant again argued that the complainant's
testimony in the prior trial about the various incidents of penetration and the "on or about" portion of the
charge in that trial were somewhat dispositive of the double-jeopardy issue. The State did not appear to
claim at this hearing, as it did at the previous hearing on appellant's pretrial writ, that it made an election
at the prior trial to rely only on the "dates named in the indictment." Instead, the State appeared to claim
that the complainant's testimony at the prior trial did not sufficiently describe the other incidents of
penetration, thus not requiring the State to have to decide whether to make an election.

 [STATE]: I went through [the complainant's] testimony. She went into detail on the two
acts. The very first and very last, which were alleged in the first indictment; one in 1997
and one in 2000. She went into great detail about those acts, Your Honor.


 However, the ones, she did say it happened about once a month and she said the first time
it happened-the first time it happened regular missionary style. However much of the other
times were from behind. Those are the only kinds of references she made to the other
acts. She never went into detail about dates. She never went into detail about the
penetration, location, or anything like that. Her main testimony was on the date in 1997
and the date in 2000.

* * *

 Your Honor, we are submitting to you that each act of sexual-each act of sexual
penetration committed by [appellant] is a separate crime. And even though [the
complainant] did in general testify that it had happened throughout the time periods of the
statute of limitations, she did not go into specifics and it was not something presented to
the jury.


 Appellant disagreed, and claimed that all of the incidents of penetration were presented to the jury
at the prior trial.

 [DEFENSE]: Now, [the complainant] testified in front of you that it started at a particular
time. First time the living room, thereafter in the bathroom. It happened from behind. He
put his penis in her vagina and then did it frontwards. That's pretty graphic for a child. 
She testified it happened once a month. I'm not sure if the prosecution wanted-[the
prosecution] wanted the [complainant] to testify or have the jury hear, "Well, on January
1st it happened. On January 7th it happened. He did it this way to me; that way. He did
it that way to me that time." She testified in response to [the prosecutions'] questions.


 It's a very, very simple matter, your Honor. Sexual contact includes penis, includes hands
touching, all those matters were brought up to the jury and the jury gladly rejected it.


 The trial court denied relief, and appellant appealed. On direct appeal, the court of appeals
rejected the State's argument that it made an election at the prior trial to seek a conviction only for the first
incident of penetration in the summer of 1998 and the last incident of penetration in August or September
of 2000. See Ex parte Pruitt, 187 S.W.3d 635, 639 (Tex.App.-Austin 2006). The court of appeals,
therefore, concluded that the record supported appellant's contention "that at his first trial, he was placed
in jeopardy for every act of genital penetration he allegedly committed against the complainant prior to the
return of the indictment" in that case, which includes the "offenses alleged" in paragraph 2 (genital
penetration) of each count of the current indictment. See id. Turning to the "offenses alleged" in paragraph
1 (genital-to-genital contact) of each count of the current indictment, the court of appeals decided that the
State may, consistent with the double-jeopardy clause, prosecute appellant for sexual assault of the
complainant by genital-to-genital contact under these paragraphs "provided, however, that the contact
proved must be distinct from, and not an incident of, any act of genital penetration committed by [appellant]
against the complainant prior to the return of the indictment" in the prior case. See Pruitt, 187 S.W.2d at
640.

 We granted review of the two grounds presented in the State's petition for discretionary review. 
These grounds state:

 What constitutes a proper election of offenses based on the court's charge and jury
argument in light of [Article 38.37]?


 Does an acquittal for charges of genital penetration necessarily preclude a charge for
genital-to-genital contact [incident to the alleged act of penetration]?


 A decision in this case that the State failed to make an election at the prior trial to seek a conviction
only for the first incident of penetration in the summer of 1998 and the last incident of penetration in August
or September of 2000 would mean that the remaining incidents of penetration testified to by the
complainant at appellant's prior trial are jeopardy-barred. (4) That would include the incidents of penetration
alleged in paragraph 2 of each count of the current indictment. See Pruitt, 187 S.W.3d at 639.

 The State argues that portions of the record from the prior trial indicate that the State made a de
facto, as opposed to a formal, election of the first and last incidents of penetration. The State argues that
this is shown by the Article 38.37 "extraneous offense" jury instruction, (5) which the State claims limited the
jury's consideration of extraneous offenses and had the effect of narrowing the jury's "focus to the offenses
alleged in the indictment." The State further argues that its jury argument "about the first time and last time
that sex acts of penetration occurred between" appellant and the complainant clearly "shows that the State
did understand the limitation imposed by the charge and had elected what offenses were the subject of the
prosecution and which were extraneous to the indictment." The State also argues that the "on or about"
language in the charge is consistent with a de facto election of the first and last incidents of penetration. 
The State argues in its brief:

 Of course, that portion of the charge is an accurate and necessary statement of the law and
entirely appropriate to include in the charge because the State could not be absolutely
certain as to the exact dates of the two specific offenses alleged in this indictment (and can
seldom be so precise in any case involving this degree of delay between the event and
outcry, arrest, and trial), but only has to show "on or about" the dates alleged. [Citations
omitted]. The victim herself could not be more specific as to the dates of the offenses.
[Citation to record omitted].[ (6)]


 In a concurring opinion summarizing this Court's jurisprudence in cases like this, Judge Meyers
wrote in Rankin:

 When the evidence proves two or more instances of misconduct, either of which would
support conviction for the alleged offense, and the defendant does not demand an election
before the case is submitted for jury consideration, this Court has deemed the evidence
sufficient for conviction if it adequately proves either instance of misconduct. (Citation
omitted). Of course, under these circumstances, we also consider a subsequent
prosecution for any such instance of misconduct to be jeopardy barred because it is
impossible to determine which offense the jury actually found the defendant to be guilty of. 
(Citation omitted).


Rankin, 953 S.W.2d at 742 (Meyers, J., concurring).


 In this case, appellant did not demand an election in the prior trial, at the close of the State's
evidence, or at any other time. See Phillips, 193 S.W.3d at 909 (trial court errs in failing to require the
State to elect at the close of its evidence when properly requested by the defense). Rather, this case
presents the less-common scenario where the State is claiming to have made an election in the absence of
a request by the defendant. In the terminology of Judge Meyers' concurring opinion in Rankin, the State
seeks to "avoid the bite of our case law" that a failure to have made an election in the first trial means that
every instance of penetration presented at this trial is jeopardy-barred. See Rankin, 953 S.W.2d at 743
(Meyers, J., concurring); see also Dixon, 201 S.W.3d at 735; Goodbread, 967 S.W.2d at 860-61 (if
"evidence of more than one offense is admitted and a conviction for either could be had under the
indictment, and neither the State nor the court elects, a plea of former conviction [or acquittal] is good upon
a prosecution based upon one of said offenses, it being uncertain for which one the conviction [or acquittal]
was had").

 Though portions of the record of the prior trial may indicate that the State "focused" on the first and
last incidents of penetration and that, if forced to elect, it probably would have picked these two incidents, (7)
the record nevertheless reflects that the jury was still authorized to convict appellant based on the other
incidents of penetration. It is impossible to determine (8) with any certainty (9) which specific incidents of
penetration that the jury actually acquitted appellant of in the prior trial. If the State did make an election
at the prior trial, it did not do so with the required specificity. If, as in this case, a reviewing court finds itself
in the position of having to guess whether the State made an election, then it should decide that there was
no election. Cf. Tex. R. App. Proc. 33.1(a)(1)(A) (prerequisite for presenting complaint for appellate
review requires party to make timely request with sufficient specificity to make trial court aware of the
request). We decide that there was no effective election at appellant's prior trial. The court of appeals,
therefore, correctly decided that the incidents of penetration alleged in paragraph 2 of each count of the
current indictment are jeopardy-barred. See Pruitt, 187 S.W.3d at 639.

 As to the genital-to-genital contact offenses alleged in paragraph 1 of each count of the current
indictment, the State argues, in support of its second ground for review, that as "a matter of anatomy and
logic, an acquittal for a charged act of penile penetration of the female sexual organ does not legally
preclude a future prosecution for genital-to-genital contact." The State argues in its brief:

 The [court of appeals] bases their holding on an earlier decision in [citation omitted],
which, consistent with this Court's rulings in [citations omitted], decided that a completed
act of penetration necessarily subsumes genital-to-genital contact committed in the course
of that penetration. That holding is entirely logical and consistent with an understanding of
anatomy and the physiology of the sexual act.


 Consistent with that logic, an acquittal for an act of genital-to-genital contact would also
necessarily preclude a subsequent prosecution or conviction for a sexual assault of a child
involving penile penetration arising from the same incident-if a defendant is not proven to
have done the former, the State could not possibly prove the latter. However, that
rationale does not hold for the reverse, because it is entirely possible to have contact by
the genitals without having penetration. Indeed a jury could be concerned about whether
or not there was penetration, particularly in light of a "normal exam" by a nurse or doctor
(one that reveals no sign of trauma but does not prove penetration did not occur) but
conclude that there was contact.

 

 The disposition of the State's second ground for review is, in large part, controlled by this Court's
decision in Patterson v. State, 152 S.W.3d 88 (Tex.Cr.App. 2004). Our decision in Patterson supports
a decision in this case that any acts of genital-to-genital contact, which were incidental or "subsumed" within
the alleged incidents of penetration for which appellant was acquitted in the prior trial, are lesser-included
offenses of these incidents of penetration. See Patterson, 152 S.W.3d at 92 (penile contact with genitals
in the course of penile penetration will be "subsumed"). (10) Thus, those types of genital-to-genital acts would
be jeopardy-barred. (11) The court of appeals, however, was correct to decide that double-jeopardy
principles do not prohibit the State from prosecuting the genital-to-genital contact offenses alleged in
paragraph 1 of each count of the current indictment "provided, however, that the contact proved must be
distinct from, and not an incident of, any act of genital penetration committed by [appellant] against the
complainant prior to the return of the indictment" in the prior trial. See Pruitt, 187 S.W.3d at 640.

 The judgment of the Court of Appeals is affirmed.


 Hervey, J.


Delivered: September 12, 2007

Publish
1. The record fairly reflects that the complainant's testimony at the 2002 trial described every alleged
incident of penetration that occurred between the summer of 1998 and August or September of 2000. See
Dixon v. State, 201 S.W.3d 730, 734 (Tex.Cr.App. 2006) (The complaining witness "described the
manner in which [defendant] sexually assaulted her and said that it occurred numerous times. 
Consequently, all of the incidents presented in the case were presented with equal specificity, and, except
for the fact that one incident occurred during the day, none of the incidents were distinguished in any
manner from each other.") (emphasis in original). We do not understand the State to claim otherwise on
discretionary review.
2. These closing arguments are attached as exhibits to the State's discretionary review petition and
to its brief. This Court generally does not consider non-record exhibits attached to a party's pleading. See
Ex parte Simpson, 136 S.W.3d 660, 668 (Tex.Cr.App. 2004). We will, however, consider these closing
arguments in this case since both parties rely on them and do not dispute their accuracy and both parties
referred to and quoted portions of these closing arguments in the trial court. We further note that it would
not have been necessary for appellant to have made these closing arguments part of an appellate record
in an appeal from the prior trial, since appellant was acquitted in that trial.
3. Immediately prior to this instruction was another instruction pursuant to Article 38.37, Tex. Code
Crim. Proc., which, in cases like this, permits the introduction of "evidence of extraneous offenses or acts"
committed by the defendant against the child who is the victim of the alleged offense for its bearing "on
relevant matters" such as the "state of mind of the defendant and the child." This instruction stated:


 [Appellant] is on trial solely on the charges contained in the indictment. In reference to
evidence, if any, that [appellant] has engaged in transactions or acts other than that which
is charged by the indictment in this case, you are instructed that you cannot consider such
other transactions or acts, if any, for any purpose, unless you find and believe beyond a
reasonable doubt that [appellant] engaged in said transactions or acts, and, even then, you
may only consider said evidence for the purpose of determining the state of mind of
[appellant] and the child, or the previous and subsequent relationship between [appellant]
and the child, if any.

4. See Dixon, 201 S.W.3d at 735; Rodriguez v. State, 104 S.W.3d 87, 91 (Tex.Cr.App. 2003);
Ex parte Goodbread, 967 S.W.2d 859, 861 (Tex.Cr.App. 1998); Rankin v. State, 953 S.W.2d 740,
742-43 (Tex.Cr.App. 1996) (Meyers, J., concurring); Ex parte Nagle, 48 S.W.3d 213, 215-18
(Tex.App.-San Antonio 2000, no pet.).
5. See Footnote 5.
6. We tend to agree that some type of "on or about" instruction might have been warranted with a
State's election of the first and last incidents of penetration. However, the "on or about" instruction actually
submitted did not address the foregoing concern expressed by the State. This instruction authorized a
conviction on any incident of penetration. 
7. Cf. Dixon, 201 S.W.3d at 736 (trial court's error in denying defendant's request that State elect
which offense that it would rely upon for conviction was harmless in part because there was no doubt which
offense the State would have picked if forced to elect).
8. See Rankin, 953 S.W.2d at 743 (Meyers, J., concurring).
9. See Goodbread, 967 S.W.2d at 860.
10. This case is distinguishable from this Court's decision in Vick where the act subsequently indicted
was not "subsumed" within the alleged act for which the defendant was acquitted in the first trial. See Vick
v. State, 991 S.W.2d 830, 31 (Tex.Cr.App. 1999) (defendant acquitted of penetrating complainant's
sexual organ with his penis and subsequently indicted for causing the complainant's sexual organ to contact
his mouth during same transaction as that in prior prosecution). 
11. See Stephens v. State, 806 S.W.2d 812, 815-17 (Tex.Cr.App. 1990) and at 821 (McCormick,
P.J., dissenting to denial of reh'g) (jury acquittal of greater offense bars subsequent prosecution for lesser-included offense).