

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00615-CR

**EX PARTE** Thomas Edward **CASTILLO**

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR11317
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Karen Angelini, Justice
             Sandee Bryan Marion, Justice
             Patricia O. Alvarez, Justice

Delivered and Filed:  April 16, 2014

REVERSED AND REMANDED

Thomas Edward Castillo was charged with three offenses related to his alleged actions on August 15, 2010. The first indictment charged him with capital murder, which the State alleged he committed by intentionally causing the death of Rogelio Nava while in the course of committing or attempting to commit the offense of burglary of Nava's home. The second indictment alleged two counts: Count I alleged that Castillo committed the aggravated assault of Carol Sanchez, and Count II alleged that Castillo committed burglary by intentionally and knowingly entering Nava's habitation without his consent and by attempting to commit and committing aggravated assault against Sanchez. Defense counsel moved to consolidate trials on the two indictments and to have the State specify in the capital murder indictment how the underlying burglary was committed. The State objected. The trial court agreed with the State and denied defense counsel's motions.

Thus, the first trial proceeded on the capital murder indictment, with the counts alleged in the other indictment set for a later trial. At the charge conference in the first trial, defense counsel requested that the lesser-included offenses of murder and manslaughter be submitted to the jury. The State objected to any lesser-included offenses being submitted, and the trial court denied defense counsel's request. Thus, the jury was instructed to answer only one question: whether Castillo committed capital murder. After hearing all the evidence in the first trial, the jury found that Castillo was not guilty of capital murder.

After Castillo was acquitted of capital murder in the first trial, trial was set on the two counts in the second indictment: burglary and aggravated assault. Castillo then filed a pretrial application for writ of habeas corpus, asserting that the State's prosecution on the second indictment violates the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the Constitution. The trial court denied relief and Castillo appealed. Because we conclude that Castillo's constitutional rights against double jeopardy are violated by the State's prosecution on the remaining two counts, we reverse the trial court's order denying his pretrial writ of habeas corpus and remand the cause with instructions to dismiss both counts.

## BACKGROUND

Castillo and Carol Sanchez were married in 2000. Ten years later, in April 2010, Sanchez met Rogelio Nava. The following month, Sanchez and Castillo separated, and Sanchez moved into Nava's home. In the early morning hours of August 15, 2010, Sanchez and Nava were stabbed by Castillo in Nava's home. Nava subsequently died from his injuries. Castillo was charged in two indictments. In Cause Number 2010-CR-11316, he was charged with capital murder:

> on or about the 15th day of August 2010, THOMAS CASTILLO, hereinafter referred to as defendant, did intentionally cause the death of an individual, namely, Rogelio Nava, hereinafter referred to as complainant, by CUTTING AND STABBING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY, A KNIFE, THAT IN THE MANNER OF ITS USE AND INTENDED USE WAS

CAPABLE OF CAUSING DEATH AND SERIOUS BODILY INJURY, and the defendant was in the course of committing or attempting to commit the offense of BURGLARY OF A HABITATION owned by Rogelio Nava;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

In Cause No. 2010-CR-11317, Castillo was charged in two counts with aggravated assault and burglary:

## COUNT I

on or about the 15th day of August 2010, THOMAS CASTILLO, hereinafter referred to as defendant, did intentionally, knowingly and recklessly cause serious bodily injury to Carol Sanchez by CUTTING AND STABBING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY A KNIFE, THAT IN THE MANNER OF ITS USE AND INTENDED USE WAS CAPABLE OF CAUSING DEATH AND SERIOUS BODILY INJURY, and Carol Sanchez was a member of the defendant's family;

## COUNT II

on or about the 15th day of August 2010, THOMAS CASTILLO did intentionally and knowingly enter a habitation, and therein attempted to commit and committed the felony offense of AGGRAVATED ASSAULT, against Carol Sanchez, without the effective consent of Rogelio Nava, the owner;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Castillo moved to set aside the capital murder indictment, arguing that the capital murder indictment failed to allege "the particular type of burglary, the specific acts defendant allegedly committed, or the constituent elements of burglary." At the hearing on the motion, defense counsel urged that the indictment should have to "specify the particular type of burglary" with which Castillo is being charged under section 30.02(a) of the Texas Penal Code. The trial court asked the prosecutor if the State had "any objection to specifying what type of burglary," and the prosecutor responded that the indictment was sufficient as it was. The trial court then denied Castillo's motion to set aside the indictment.

As a pretrial matter, Castillo also moved to consolidate Cause No. 2010-CR-11316 (the capital murder count) with Cause No. 2010-CR-11317 (the burglary and aggravated assault counts), arguing that the charges arose out of the same alleged criminal episode, occurred at the same time, and were inextricably intertwined. The prosecutor responded that the State objected to any consolidation and that "the defense can't force us to consolidate." The prosecutor stated, "It is, in essence, the State's choice, and we would like to sever these, keep them separate, they were indicted separately, and try Mr. Castillo for the capital murder first." Defense counsel objected again, stating that he was "notifying everybody that we think Mr. Castillo, not only his rights to due process would be violated, but if there is a subsequent trial, that his rights to double jeopardy under the United States and State's Constitutions would also be violated." The trial court denied Castillo's motion to consolidate.

In his brief, Castillo points out that during pretrial hearings, the prosecutor made the following arguments, which admitted all three counts (the capital murder, the burglary, and the aggravated assault) were part of the same criminal transaction:

- [W]e are alleging the – in very legal terms, an aggravated assault with a deadly weapon against Carol [Sanchez], which again is – will come out in the facts of the case, meaning that he is stabbing her with a knife, causing her serious bodily injury. That's part of the State's case. . . . It's the same criminal transaction.

- We allege again same date. We say that he entered a habitation and therein committed the felony offense of aggravated assault against Carol [Sanchez]; again, same criminal transaction, same facts.

- [A]gain, August 15, 2010, defendant strangled and choked Carol Sanchez. That's part of the offense. It's part of within the same criminal transaction. It's what he did. She is going to testify to that as far as what was done to her.

- [T]hat he broke her teeth in the course of committing his aggravated assault against her. Again, same criminal transaction, same episode, same facts. That's what she will testify to. *That's what was done to her as part of the capital murder*.

(emphasis added).

Carol Sanchez was the first witness to testify at the capital murder trial. According to Sanchez, she was married to Castillo when she met Nava in April 2010. The next month, she separated from Castillo and moved in with Nava. However, she continued to have sexual relations with Castillo. Sanchez testified that on August 14, 2010, she was at a sports banquet with Castillo and their kids when Castillo threatened to kill her. She left and went to Nava's home. Later that evening, she and Nava went to a bar and returned to his home around 2:00 a.m. Sanchez testified that they had started "playing around in the car," and she ran into Nava's home nude. She and Nava then went to his bedroom and were beginning to have sexual relations when Castillo attacked them. Nava was hit in the back first. According to Sanchez, Castillo then stabbed her on her left-hand side.

Sanchez testified that she recognized the attacker as Castillo. When Castillo ran to the kitchen to get more knives, Sanchez ran to the door. Castillo threw her on the couch and punched her over and over again. He then ran back to the kitchen, and Sanchez was able to get out the door to the porch. According to Sanchez, Castillo came out with two knives. He used one to stab her, but broke the handle of the knife. He then bit her finger. When Castillo ran back into the house, Sanchez was able to run to a neighbor's home for help. Although the neighbor would not open the door so that Sanchez could enter, she did call 911. Sanchez then heard Castillo leaving in his truck. When EMS arrived, she told them to go into Nava's home because she thought Castillo had killed Nava. In all, Sanchez suffered eleven stab wounds. Castillo also broke her arm. As a result of her injuries, she was hospitalized for a week.

Oscar Lua, a friend of Castillo's, testified that on August 14, 2010, Castillo called him around 8:30 p.m., and was distraught and "hot-headed." Lua then met with Castillo in person. Castillo told Lua that he "couldn't take it anymore." According to Lua, Castillo said that he wanted to "take out Carol [Sanchez] for what she ha[d] done." Castillo said that because Sanchez was not

a threat, he was going to attack the boyfriend first. Castillo told Lua that he had been at a banquet with Sanchez who had told him that she did not want anything to do with him anymore. Lua testified that after he talked to Castillo, Castillo calmed down and "came back to Earth." Later, in the early hours of the morning, Lua received another telephone call from Castillo who claimed he needed help. He told Lua that he had stabbed Sanchez and her boyfriend. Lua went to Nava's home. When he saw police officers at the home, he stopped and told one of the officers that he thought they were looking for his friend Castillo.

A paramedic testified to the number and type of stab wounds suffered by Sanchez. Photographs of her injuries and medical records were introduced in evidence. There was also testimony that Nava was found dead in his home. Photographs from the crime scene were introduced in evidence. The photographs depict blood all over the porch; Nava's nude body lying on the floor of his bedroom; a bloody knife with a handle missing; blood on the floor in the home; another knife with its handle detached on Nava's bed; knives on the floor in the kitchen area; and open drawers in the kitchen. The medical examiner found that Nava had suffered from (1) one stab wound that penetrated through his ribs, lung, diaphragm, and aorta; (2) one stab wound that penetrated through his liver, mesentery, and small bowel; (3) two incised wounds to the head; (4) one stab wound to the posterior upper back; and (5) incised wound to the left hand. The medical examiner concluded that Nava died as a result of multiple sharp force injuries to the trunk and that the manner of his death was a homicide.

At the close of the State's evidence, Castillo moved for an instructed verdict, arguing that there was no evidence to show that he intentionally caused the death of Nava or that he had committed the predicate offense of burglary underlying the capital murder charge. The court denied the motion. The defense then introduced texts messages between Sanchez and Castillo during the time of their separation, showing Sanchez propositioning Castillo for sex.

At the charge conference, Castillo requested the submission of the lesser-included offenses of murder and manslaughter on two theories: (1) he argued that there was a question whether he had intentionally caused the death of Nava; and (2) he argued that there was a question whether he had committed the underlying offense of burglary. The State opposed the lesser-included offenses being submitted and the trial court denied the requests.

The application paragraph of the charge instructed the jury the following:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th day of August 2010 in Bexar County, Texas, the defendant, Thomas Castillo, did intentionally cause the death of an individual, namely, Rogelio Nava, by cutting or stabbing Rogelio Nava with a deadly weapon, namely, a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, and Thomas Castillo was in the course of committing or attempting to commit the offense of burglary of a habitation owned by Rogelio Nava, then you will find the defendant guilty of capital murder as charged in the indictment.

> If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

In applying the above paragraph, the jury charge instructed the jury on the offenses of murder; capital murder; burglary; and aggravated assault:

- Our law provides that a person commits the offense of murder if he intentionally causes the death of an individual.

- A person commits capital murder when such person intentionally commits the murder in the course of committing or attempting to commit the offense of burglary.

- Our law provides that a person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation with intent to commit an aggravated assault, or enters a habitation and commits or attempts to commit an aggravated assault.

- Our law provides that a person commits the offense of aggravated assault if the person intentionally or knowingly causes bodily injury to another, and uses or exhibits a deadly weapon during the commission of such assault.

During closing argument, defense counsel argued that while Castillo killed Nava, he did not commit capital murder. After discussing the text messages between Castillo and Sanchez, defense counsel argued that Castillo believed he and Sanchez were reuniting:

> And she told him that night. She slammed the door shut. She told him, "It's him, not you." He realized then it's over, and he snapped and he did wrong, and there is no question about it. And don't let them try to stand up in here and say that we are trying to justify that or say it was right or that it was not a crime. We are not saying that. He committed a crime. He committed several crimes, but the one crime he did not commit is capital murder, because he didn't intentionally kill Rogelio Nava, and that's the crime they have charged. . . . Carol [Sanchez] was the only one who had the power to hurt him, to disappoint him, and he did it all wrong, but Carol was his focus, and he had no focus left for Rogelio Nava, and he had no intent to hurt Mr. Nava. He went over there; he saw them engaging in sex. He hit the man in the back with the knife, got him off, and then he attacked and committed a crime against Carol. And how differently they were. Let's talk about the sharp force injuries. . . . That's what Dr. Peacock told you was the one necessarily fatal wound. But think about how it happened. Use your common sense, and I know you will. Went in the back. Who intentionally kills somebody by stabbing them in the back? It happened to penetrate the aorta and there was rapid bleeding and loss of life, but is that the way you intend to kill somebody? You cut their throat.

The jury returned a verdict of not guilty of capital murder. Thus, in Cause No. 2010-CR-11316, the trial court signed a judgment of acquittal.

After the judgment of acquittal was signed, Castillo filed a pretrial application for writ of habeas corpus in Cause No. 2010-CR-11317 (the burglary and aggravated assault case), asserting that trial on this indictment would violate the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution. At the hearing on the application, Defendant's Exhibits A through I were admitted:

- Exhibit A: True Bill of Indictment in Cause No. 2010-CR-11316 (capital murder case);

- Exhibit B: True Bill of Indictment in Cause No. 2010-CR-11217 (burglary & aggravated assault case);

- Exhibit C: Defendant's Motion to Set Aside the Indictment Number One in Cause No. 2010-CR-11316 (capital murder);

- Exhibit D: Reporter's Record of the trial on the merits in Cause No. 2010-CR-11316 (capital murder);

- Exhibit E: Defendant's Objections to Evidence Pursuant to Rule 103(a)(1) in Cause No. 2010-CR-11316 (capital murder);

- Exhibit F: Defendant's Special Requested Jury Instruction Number One in Cause No. 2010-CR-11316 (capital murder);

- Exhibit G: Defendant's Special Requested Jury Instruction Number Three in Cause No. 2010-CR-11316 (capital murder);

- Exhibit H: Charge of the Court in Cause No. 2010-CR-11316 (capital murder); and

- Exhibit I: Judgment of Acquittal by Jury in Cause No. 2010-CR-11316 (capital murder).

The trial court also took judicial notice of its files in both cause numbers. After hearing argument of counsel, the trial court denied relief. Castillo then brought this appeal.

## DOUBLE JEOPARDY

The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Ex parte Denton*, 399 S.W.3d 540, 545 (Tex. Crim. App. 2013). Here, Castillo argues that he is being prosecuted a second time for the same offense after acquittal. "It is well-settled that upon conviction or acquittal in a trial court the Double Jeopardy Clause bars retrial for the 'same' offense." *Stephens v. State*, 806 S.W.2d 812, 816 (Tex. Crim. App. 1990) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). Thus, we must consider whether the burglary and aggravated assault charges in this case constitute the "same offense" as the capital murder charge.

"For double jeopardy purposes, the same offense means the identical criminal act, not the same offense by name." *Ex parte Goodbread*, 967 S.W.2d 859, 860 (Tex. Crim. App. 1998) (citations omitted). The Texas Court of Criminal Appeals has explained that the "Legislature has

the power to establish and define crimes and few, if any, limitations are imposed upon this power by the Double Jeopardy Clause." *Garfias v. State*, No. PD-1544-12, 2014 WL 714718, at *2 (Tex. Crim. App. Feb. 26, 2014). In determining whether a defendant, after acquittal, is being prosecuted for the same offense, we identify the appropriate "unit of prosecution" when the offenses are alternative means of committing the same statutory offense. *See id.*; *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). We apply the "same elements test" established in *Blockburger* when the offenses in question come from different statutory sections. *See Garfias*, 2014 WL 714718, at *2.

The *Blockburger* test requires us to determine whether each of the offenses require a proof of an element that the other does not. *Id.* at *3. "In doing so, [we] must focus on the elements alleged in the charging instrument–not on the offense as defined in the Penal Code." *Id.* "Under this so-called cognate-pleadings approach, double-jeopardy challenges can be made even against offenses that have different statutory elements, if the same facts required to convict are alleged in the indictment." *Id.* Thus, a lesser-included offense is considered constitutionally the "same offense" as a greater offense for purposes of double jeopardy. *See Ex parte Denton*, 399 S.W.3d at 545-46. If a person is convicted and sentenced for both a greater and a lesser-included offense, the same conduct is punished twice – once for the basic conduct and a second time for that conduct plus more. *Id.* at 545; *see In re Nielsen*, 131 U.S. 176 (1889) (holding that convicting a man for bigamy and then prosecuting him for committing adultery, a continuous offense, with the same wife on the next day after the end of the bigamy offense violated double jeopardy because adultery was a necessary part of, and a lesser-included offense of, bigamy); *January v. State*, 695 S.W.2d 215 (Tex. App.—Corpus Christi 1985) (holding that convictions in one trial for kidnapping and attempted capital murder in the course of kidnapping were held to violate the double jeopardy clause because the kidnapping was a necessary part of the attempted capital murder of the same

victim), *aff'd*, 732 S.W.2d 632 (Tex. Crim. App. 1987). Similarly, the Texas Court of Criminal Appeals has explained that because the "Double Jeopardy Clause bars a second prosecution that would require the accused to 'run the gauntlet' again," "the Double Jeopardy Clause bars a subsequent prosecution for a lesser-included offense." *Stephens*, 806 S.W.2d at 819.

The Texas Court of Criminal Appeals has further explained that the *Blockburger* test is only a starting point and a rule of statutory construction; it is not the exclusive indicator of a double jeopardy violation. *See Garfias*, 2014 WL 714718, at *3. That is, the *Blockburger* test "cannot allow two punishments for a single course of conduct when the Legislature intended to authorize only one." *Id.* Thus, in *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999), the court set forth a list of non-exclusive factors designed to help courts in the absence of clear guidance from the Legislature:

> whether the offenses provisions are contained within the same statutory section; whether the offenses are phrased in the alternative; whether the offenses are named similarly; whether the offenses have common punishment ranges; whether the offenses have a common focus; whether the common focus tends to indicate a single instance of conduct; whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes.

The court has also explained that when making a *Blockburger* "elements" analysis, courts should determine the allowable unit of prosecution for the offenses in question. *Garfias*, 2014 WL 714718, at *3. "Although such a determination is a necessary step when a multiple-punishments claim deals with two offenses from the same statutory section," the court noted that "even in an 'elements' analysis, such a determination can be indicative of legislative intent." *Id.*

**DISCUSSION**

Castillo argues that because he was acquitted of the capital murder of Rogelio Nava, the Double Jeopardy Clause bars the State's prosecution of him in this cause for the burglary of Nava's home and for the aggravated assault of Sanchez. Pursuant to the Penal Code, a person commits capital murder if he commits murder as defined under section 19.02(b)(1) and the person intentionally commits the murder in the course of committing or attempting to commit burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2013). Section 19.02(b)(1), in turn, provides that a person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

The indictment in the capital murder case alleged that on or about August 15, 2010, Castillo intentionally caused the death of Rogelio Nava by cutting and stabbing the complainant with a deadly weapon, namely a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury and Castillo was in the course of committing or attempting to commit the offense of burglary of a habitation owned by Rogelio Nava. Thus, part of the capital murder offense was that Castillo was in the course of committing or attempting to commit the offense of burglary of a habitation owned by Rogelio Nava.

Pursuant to the Penal Code, a person commits burglary if, without the effective consent of the owner, the person:

> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
> (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

TEX. PENAL CODE ANN. § 30.02(a) (West 2011).

Count II of the indictment in this case charged that on or about August 15, 2010, Castillo did intentionally and knowingly enter a habitation, and therein attempted to commit and committed the felony offense of aggravated assault, against Carol Sanchez, without the effective consent of Rogelio Nava, the owner. Count I of the indictment charged Castillo with the aggravated assault of Carol Sanchez. Thus, Castillo points out that his rights against double jeopardy are violated because the aggravated assault count is subsumed within the burglary count, which is also subsumed within the capital murder count. In other words, he argues that Counts I and II of this cause are lesser-included offenses of the capital murder charge. *See Sanchez v. State*, 745 S.W.2d 353, 357 (Tex. Crim. App. 1998) (explaining that aggravated assault may be a lesser-included offense of attempted capital murder); *Banda v. State*, 890 S.W.2d 42, 60 n.13 (Tex. Crim. App. 1994) (explaining that burglary and aggravated sexual assault may be lesser-included offenses of capital murder).

### A. Count II Burglary of Nava's Home

The first issue is whether burglary of a habitation as charged in Count II is a lesser-included offense of the capital murder charge of which Castillo has been acquitted. An offense is a lesser-included offense if (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).

The State argues that the burglary charge in Count II is not a lesser-included offense of the capital murder charge because the capital murder indictment did not specify how the burglary was

committed. Thus, the State argues that the aggravated assault victim underlying the burglary in the capital murder indictment could have been Rogelio Nava, and not Carol Sanchez.

The problem with the State's argument is that Castillo cannot be convicted of two burglary offenses under these facts. A conviction for a burglary with Nava being named as the victim of the underlying assault and a conviction for a burglary with Sanchez being named as the victim of the underlying assault would violate double jeopardy. In *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006), the Texas Court of Criminal Appeals explained that the allowable unit of prosecution in a burglary of a habitation is the unlawful entry, not the complainant. The court explained that "the gravamen of a burglary is the entry without the effective consent of the owner and with the requisite mental state." *Id.* "[W]hen a burglary is committed, the harm results from the entry itself." *Id.* "The offense is complete once the unlawful entry is made, without regard to whether the intended theft or felony is also completed." *Id.* While the allowable unit of prosecution for an assaultive offense is each complainant, burglary "is not an assaultive offense." *Id.* "[R]ather, its placement within Title 7 indicates the legislature determined burglary to be a crime against property." *Id.* "Thus, the complainant is not the appropriate allowable unit of prosecution in a burglary; rather, the allowable unit of prosecution in a burglary is the unlawful entry." In *Cavazos*, the defendant was charged with two counts of burglary of a habitation, arising from the same incident but alleging different complainants. *Id.* at 335. Because the allowable unit of prosecution was the unlawful entry and not the complainant, the court of criminal appeals held the defendant's two convictions of burglary violated double jeopardy "because he was punished multiple times for a single unlawful entry." *Id.* at 338.

Here, the State is seeking to prosecute Castillo multiple times for a single unlawful entry. It already prosecuted him for one unlawful entry in the capital murder trial. It cannot do so again

in this case. Thus, the State's prosecution of Castillo for the burglary of Nava's home violates the Double Jeopardy Clause of the Constitution.

      *B.   Aggravated Assault of Carol Sanchez*

      With regard to Count I of the indictment, which charged the aggravated assault of Sanchez, the State again argues that the aggravated assault in Count I is not a lesser-included offense of the capital murder because the aggravated assault victim underlying the burglary in the capital murder indictment could have been Rogelio Nava, and not Carol Sanchez. Thus, theoretically, the capital murder charge could have alleged Nava as the aggravated assault victim in the underlying burglary, which would be a different offense from Count I's aggravated assault of Sanchez. Under such a scenario, there would be two different victims and no double jeopardy violation because the State would not need to prove the aggravated assault of Sanchez to prove the capital murder.

      The problem, however, with the State's argument is that the State did not make an election in the capital murder trial, and the language of the capital murder indictment and jury charge was sufficiently broad to have included either Sanchez or Nava as the assault victim. The capital murder indictment broadly charged Castillo with committing capital murder by intentionally causing the death of Nava while "in the course of committing or attempting to commit the offense of burglary of a habitation owned by Rogelio Nava." At a pretrial hearing, Castillo argued that the capital murder indictment should have to "specify the particular type of burglary" charged. The State refused, and the trial court denied Castillo's motion. The jury charge in the capital murder case broadly asked the jury to determine whether Castillo intentionally caused the death of Nava while "in the course of committing or attempting to commit the offense of burglary of a habitation owned by Rogelio Nava." The jury was instructed that "a person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation with intent to commit an aggravated assault, or enters a habitation and commits or attempts to commit an aggravated

assault." Evidence that Castillo had committed an aggravated assault against Nava *and* Sanchez was presented at the capital murder trial. Thus, the jury charge authorized the jury to find that Castillo committed the burglary underlying the capital murder allegation if it believed beyond a reasonable doubt that he committed aggravated assault against either Nava or Sanchez.

The court of criminal appeals has explained that "[i]f evidence of more than one offense is admitted [at a trial] and a conviction for either could be had under the indictment, and neither the State nor the court elects" which offense it is proceeding with to verdict, the Double Jeopardy Clause bars later prosecution of offenses for which proof was offered at trial. *Ex parte Goodbread*, 967 S.W.2d 859, 860-61 (Tex. Crim. App. 1998) (citations omitted).

For example, in *Ex parte Pruitt*, 233 S.W.3d 338 (Tex. Crim. App. 2007), the court of criminal appeals was faced with a situation where the evidence raised multiple offenses committed by the defendant. In his first trial, the defendant was charged with sexual assault, which was alleged to have occurred on or about August 15, 2000, and aggravated sexual assault, which was alleged to have occurred on or about June 15, 1997. *Id.* at 340. At trial, the complainant testified that the defendant first penetrated her sexual organ with his penis some time after her eighth-grade school year and before her fourteenth birthday in the summer of 1998. *Id.* She testified that the defendant last penetrated her sexual organ with his penis in August or September of 2000 when she was sixteen years old. *Id.* She also testified that the defendant penetrated her sexual organ with his penis "at least once a month" between the first incident and the last incident. *Id.* The State made no formal election of which incidents of penetration it would rely upon for conviction. *Id.* at 341. The jury charge instructed the jury to convict the defendant of count I of the offense if it found, among other things, that the defendant committed the offense "on or about" August 15, 2000. *Id.* at 343. With respect to count II, the jury was instructed to convict the defendant if it found, among other things, that the defendant committed the offense "on or about" June 15, 1997. *Id.* The jury

was also instructed that the State was "not required to prove the exact date alleged in the indictment, but may prove the offense, if any, to have been committed at any time prior to the presentment of the indictment, so long as said indictment is presented within ten years from the 18th birthday of the victim of the offense." *Id.* The jury acquitted the defendant on both counts. *Id.*

Subsequently, the State charged the defendant with two counts of sexual assault of the same complainant when she was younger than seventeen years of age, alleging that the defendant committed the offense "on or about" June 15, 1999, and July 15, 1999, respectively. *Id.* The defendant filed a pretrial writ of habeas corpus claiming that this new prosecution was jeopardy-barred because of the prior acquittal. *Id.* The court of criminal appeals agreed with the defendant. *See id.* at 346-48. It noted that in the prior trial, the defendant did not demand an election at the close of the State's evidence or at any other time. *Id.* at 346. The court explained that "this case presents the less-common scenario where the State is claiming to have made an election in the absence of a request by the defendant," seeking "'*to avoid the bite of our case law' that a failure to have made an election in the first trial means that every instance of penetration presented at this trial is jeopardy-barred*." *Id.* (emphasis added). In doing so, the court cited *Ex parte Goodbread*, 967 S.W.2d 859, 860-61 (Tex. Crim. App. 1998), for the proposition that "if 'evidence of more than one offense is admitted and a conviction for either could be had under the indictment, and neither the State nor the court elects, a plea of former conviction [or acquittal] is good upon a prosecution based upon one of said offenses, *it being uncertain for which one the conviction [or acquittal] was had*.'" *Ex parte Pruitt*, 233 S.W.3d at 347 (quoting *Goodbread*, 967 S.W.2d at 860-61) (emphasis added) (alteration in original).

The court emphasized that although portions of the record in the first trial "may indicate that the State 'focused' on the first and last incidents of penetration and that, if forced to elect, it probably would have picked these two incidents, the record nevertheless reflects that the jury was

- 17 -

still authorized to convict appellant based on the other incidents of penetration." *Id.* According to the court, "[i]t is impossible to determine with any certainty which specific incidents of penetration that the jury actually acquitted appellant of in the prior trial." *Id.* "If the State did make an election at the prior trial, it did not do so with the required specificity." *Id.* "If, as in this case, a reviewing court finds itself in the position of having to guess whether the State made an election, then it should decide that there was no election." *Id.* Because the State had not made an election in the first trial, the court of criminal appeals concluded that the incidents of penetration alleged in the current indictment were jeopardy-barred. *Id.*

Similarly, here, the capital murder indictment in the first trial did not specify in the underlying burglary allegation the identity of the aggravated assault complainant. The evidence at the first trial raised both Nava and Sanchez as aggravated assault complainants. The State did not make an election, and the jury charge authorized the jury to find that Castillo committed the burglary underlying the capital murder allegation if it believed beyond a reasonable doubt that Castillo entered Nava's home and committed or attempted to commit an aggravated assault against either Nava or Sanchez. Thus, any later prosecutions for the aggravated assault of Sanchez is jeopardy-barred as long as aggravated assault is a lesser-included offense of the burglary and thus the capital murder.

The State points to our opinion in *Rangel v. State*, 179 S.W.3d 64 (Tex. App.—San Antonio 2005, pet. ref'd), in support of its argument that Count I's aggravated assault charge is not a lesser-included offense of burglary. In *Rangel*, the first count of the indictment charged that Rangel had intentionally or knowingly entered the habitation of Hatzenbuehler and attempted to commit or committed the felony offense of aggravated assault. *Id.* at 70. The second count charged that Rangel intentionally, knowingly, or recklessly caused bodily injury to Medrano by stabbing the said Medrano with a knife. *Id.* We explained that under *Blockburger*'s "same elements" test,

burglary as charged required proof of a fact that the aggravated assault charge did not. *Id.* at 71. "However, to prove the burglary charge, the State had to necessarily prove the elements of aggravated assault." *Id.* "Thus, it would seem that the aggravated assault charge does not require proof of a fact that burglary does not." *Id.* Because the indictment charging burglary in that case required the State to necessarily show the commission of an aggravated assault, we held that Rangel's conviction and sentences on both charges violated his double jeopardy rights. *Id.* at 73.

The State points to the portion of the opinion where we noted that aggravated assault is not necessarily a lesser-included offense of burglary by entering a habitation with the *intent* to commit aggravated assault, as under that scenario the State would not be required to prove that an actual aggravated assault occurred. *Id.* at 72. The State argues the same is possibly true in this case. However, as noted above, the problem with the State's argument is that the capital murder indictment and the jury charge contained broad language. The indictment did not specify how the underlying burglary was committed. And, the jury charge broadly instructed the jury in the disjunctive:

> Our law provides that a person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation **with intent to commit an aggravated assault,** *or* **enters a habitation and commits or attempts to commit an aggravated assault**.

Thus, the jury charge in the capital murder case allowed the jury to convict if it found Castillo had entered a habitation with intent to commit an aggravated assault **or** entered a habitation and committed or attempted to commit an aggravated assault. And, evidence was presented at the capital murder trial to support either allegation. Thus, the State is now jeopardy-barred from prosecuting Castillo for the aggravated assault of Sanchez. *See Ex parte Pruitt*, 233 S.W.3d at 347; *Ex parte Goodbread*, 967 S.W.2d at 860-61.

- 19 -

## CONCLUSION

Because the Double Jeopardy Clause of the Constitution bars the State from prosecuting Castillo on Counts I and II of the indictment, we reverse the trial court's order denying his pretrial writ of habeas corpus and remand the cause with instructions to dismiss both counts.


Karen Angelini, Justice

Publish