# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.  03-19-00211-CR

**Christopher M. Wong, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 167TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-15-302712, THE HONORABLE P. DAVID WAHLBERG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Christopher M. Wong was charged with two counts of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021.[1]  The jury found Wong guilty of the second count, and Wong was sentenced to fifteen years' imprisonment. *See id.* § 12.32.  In two issues on appeal, Wong challenges the sufficiency of the evidence supporting his conviction and argues that the district court erred by admitting testimony from an outcry witness.  We will affirm the district court's judgment of conviction.

## BACKGROUND

Wong was charged with alternative counts of aggravated sexual assault of a child allegedly occurring on the same day. *See* Tex. Penal Code § 22.021.  The first count alleged that

---

[1] The indictment also alleged two counts of indecency with a child by contact and two counts of indecency with a child by exposure. *See* Tex. Penal Code § 21.11.  However, the State abandoned those counts before voir dire.

Wong penetrated Child's female sexual organ with his sexual organ, and the second count alleged that Wong contacted Child's female sexual organ with his sexual organ. At the time of the alleged misconduct, Wong was 24 years old, and Child was eleven years old. The following summary comes from the testimony and other evidence presented at trial.

In the months leading up to the night in question, Child was living with her mother, her adult sister, and her infant brother. Child's cousin would sometimes spend the night with the family after finishing work. On those occasions, Cousin would either sleep downstairs on the couch or sleep in Child's room. Prior to the night in question, Mother had been working at a laundromat where she met Wong. Mother allowed Wong, then homeless, to stay inside the laundromat while she worked. When her children came to her work one day, Mother introduced her children to Wong. After the two met, Wong and Sister began dating, and Wong would regularly spend the night at the family's home.

On the night in question, Mother and Sister wanted to go out to eat, but Child wanted to stay home and finish playing a video game with Wong in her bedroom. Mother agreed to allow Child to stay with Wong while the rest of the family went out to eat. After Mother, Sister, and Brother left, Cousin arrived at the home after finishing her work shift. When she arrived, Cousin did not think anyone was home because no one was downstairs, and she headed upstairs toward the bedrooms and heard a female's voice. After hearing that, Cousin peaked into Child's bedroom, realized that Child was the person whose voice she heard, saw Wong's naked butt moving up and down while he was on top of Child, and saw one of Child's legs wrapped around Wong's leg. At trial, Cousin testified that it appeared as though Wong was having sex with Child.

After seeing Wong and Child in the bedroom, Cousin repeatedly called Mother and Sister on their cell phones and told them to come home. When Mother and Sister returned home, Cousin told Mother what she saw. Upon hearing this, Mother became upset, did not want to believe that it happened, and asked Child and Wong what happened. Both Child and Wong denied that anything happened, and Mother told Wong to leave the house. After Wong left, Mother took Child to the hospital. Mother testified that she told the treating medical personnel that she was worried that Child had been assaulted, but Child testified that she did not tell the hospital personnel what happened. At trial, Child related that a doctor examined her vagina and said that everything was fine, and Mother explained that the hospital personnel stated that Child's vagina was irritated but that nothing had been forced inside her vagina.

Later the next day, Mother asked Child again if something happened, and Child stated that Wong kissed her on her neck, that he "forced his thing in" her, that she "tried to tell him to stop," that he "wouldn't stop," and that he told her that he would hurt Mother and her if Child told anyone. After Child told Mother what happened, Mother called the police. When the police arrived, they questioned Child and then transported her and Mother to the hospital so that a sexual-assault-forensic exam could be performed.

During the exam, Child informed the sexual-assault-nurse examiner that Wong "put his thing inside of me, and it hurt. While he was inside me, he tried to kiss my lips and my neck." Further, Child pointed to her genitals when asked to clarify what she meant by Wong's "thing" and told the nurse examiner that it felt like she "popped [her] cherry." In addition, the nurse examiner found that there was a transection or laceration to Child's hymen and explained that although she could not state what caused the transection, the injury was consistent with Child's description of what occurred the previous night. The nurse examiner did not see any

trauma to Child's vagina, perineum, or anus. When discussing Child's first visit to the hospital, the nurse examiner testified that the records indicated that Child did not make an outcry of sexual abuse and instead complained about itchiness on her vagina. Additionally, the nurse examiner obtained swabs from Child's neck and other body parts. Testing performed on the swab from Child's neck revealed the presence of male DNA, showed the presence of a mixture of DNA from three people, did not exclude Wong as a potential contributor, and established that it was "135 trillion times more likely that the DNA came from [Child], . . . Wong, and one unknown individual than if the DNA came from [Child] and two unrelated unknown individuals."

When the exam was over, Mother and Child went home, and Mother called Wong on the phone and placed the call on speakerphone so that Child could hear and participate in the conversation. During the phone call, Wong repeatedly said that he was sorry and "didn't mean to do it."

At trial, Child testified that Wong touched her leg on the night in question after Mother and Sister left the house, that her clothes were removed, that he got on top of her, that his penis touched her vagina, and that he was moving while he was on top of her. Further, although Child explained that she was not paying attention when asked if Wong's penis went inside her vagina, Child testified that Wong's actions were physically hurting her vagina, that she had never experienced anything like that before, that "the sex" is what caused her to feel pain, that sex involves body parts from a man and a woman, and that what happened was rape.

In his case in chief, Wong called Dr. Carrie Edwards to the stand. Dr. Edwards testified that the sexual-assault-exam records showed that there was a complete transection of Child's hymen likely caused by blunt force trauma. However, she also stated that she would expect to see scabs, "redness, swelling, and bleeding" if the injury occurred at the time described

4

by Child but that her review of the medical records did not show the presence of those types of trauma. Moreover, she related that she observed the presence of scar tissue in the photos taken during the forensic exam and described the injury as old and going through the healing process. Further, Dr. Edwards noted that the records from the first hospital trip indicated that a full examination of Child's genitals was performed but did not list any trauma other than redness, which a bacterial or yeast infection could have caused. Dr. Edwards opined that if a complete transection had occurred just before the first hospital examination, she would expect there to be entries in the record concerning trauma to the genitals. Finally, Dr. Edwards testified that based on her review of the records and the injury, it was very unlikely that the complete transection occurred during the alleged assault and that she was "99.99 percent confident that [the injury to Child's hymen] did not occur during that time frame."

After considering the evidence presented at trial, the jury found Wong guilty of the second count pertaining to contact with Child's sexual organ. Wong appeals his conviction.

## DISCUSSION

In his first issue on appeal, Wong asserts that the evidence presented at trial was insufficient to support his conviction. In his second issue on appeal, Wong argues that the district court erred by allowing Mother to testify as an outcry witness.

### Sufficiency of the Evidence

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind

5

that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). The factfinder is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

Under the Penal Code, an individual commits the offense of aggravated sexual assault of a child if he "intentionally or knowingly . . . causes the penetration of the . . . sexual organ of a child by any means" or "causes the sexual organ of a child to contact . . . the . . . sexual organ of another person, including the actor" if "the victim is younger than 14 years of age, regardless of whether the person knows the age of the victim at the time of the offense." Tex. Penal Code § 22.021(a). Consistent with the Penal Code, the jury charge in this case

6

specified that Wong committed the offense of aggravated sexual assault of a child if he intentionally or knowingly (1) penetrated Child's sexual organ with his sexual organ or (2) contacted Child's sexual organ with his sexual organ. Further, the charge explained that if the jury found Wong guilty of the first count, it did not need to consider the second count. At the end of the guilt-or-innocence phase, the jury found Wong guilty of count two.

When presenting his sufficiency challenge, Wong argues that the evidence presented at trial was insufficient to establish penetration of Child's sexual organ because it was based on an unreliable outcry statement to Mother, because Child's statements to the nurse examiner and her testimony were vague regarding what allegedly occurred, and because the photographs taken during the sexual-assault exam and the testimony from Dr. Edwards all established that no penetration occurred on the night in question. Building on that premise, Wong argues that there was also insufficient evidence of contact because the State presented no evidence to prove "any contact other than the alleged penetration." Stated differently, Wong contends that the evidence must also be insufficient to establish contact because double jeopardy prohibits the State from pursuing "charges for sexual assault by contact where" there is no "evidence of a discrete and distinct contact separate from . . . penetration" and "where a defendant is acquitted of sexual assault by penetration."

As support for his arguments, Wong points to *Ex parte Pruitt*, 233 S.W.3d 338 (Tex. Crim. App. 2007), but we find that case to be distinguishable. In that case, Pruitt was charged with one count of sexual assault and one count of aggravated sexual assault involving the penetration of the same child victim's vagina. *Id.* at 340. Although the indictment provided two dates for which the offenses occurred "on or about," *id.*, evidence was presented during the trial regarding multiple penetrative acts over an extended period of time, *id.* at 340-42. At the

7

end of the trial, "[t]he jury acquitted appellant of both counts." *Id.* at 343. Following Pruitt's acquittal, the State charged him with two counts of sexual assault of the same victim with different "on or about" dates. *Id.* Each count contained a paragraph alleging that Pruitt committed the offense by making his sexual organ contact the victim's sexual organ and a separate paragraph alleging that Pruitt penetrated the victim's sexual organ with his sexual organ. *Id.* After being charged, Pruitt filed a pretrial writ of habeas corpus alleging that the second prosecution "is jeopardy-barred because of the prior acquittal." *Id.*

On appeal, the Court of Criminal Appeals agreed that the portions of the new counts alleging penetration were barred by double jeopardy because the State made no election regarding which incidents of penetration it was relying on for a conviction in the first trial and because the evidence presented at the prior trial would have allowed the jury to convict Pruitt based on the evidence regarding multiple "incidents of penetration" over an extended period of time including the new "on or about" dates alleged in the new indictment. *Id.* at 340, 341, 347. Regarding the new assault-by-contact allegations, the Court of Criminal Appeals explained "that any acts of genital-to-genital contact, which were incidental or 'subsumed' within the alleged incidents of penetration for which appellant was acquitted in the prior trial . . . . would be jeopardy-barred" but that "the genital-to-genital contact offenses" in the new indictment would not be jeopardy-barred "'provided . . . that the contact proved [is] distinct from, and not an incident of, any act of genital penetration committed by [appellant] against the complainant prior to the return of the indictment' in the prior trial." *Id.* at 348 (second alteration in original) (quoting *Ex parte Pruitt*, 187 S.W.3d 635, 640 (Tex. App.—Austin 2006), *aff'd*, 233 S.W.3d 338 (Tex. Crim. App. 2007)).

8

In contrast, in this case, Wong was not subjected to a potential double-jeopardy violation. The "Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). Although the jury charge did list the count pertaining to penetration first and specified the jury did not need to consider the count pertaining to contact if it found Wong guilty of the first count, "those determinations were all made as part of the same trial." *See Williams v. State*, No. 03-18-00267-CR, 2018 WL 3451635, at *10 (Tex. App.—Austin July 18, 2018, pet. ref'd) (mem. op., not designated for publication). In other words, the jury was asked to determine whether Wong's alleged misconduct constituted aggravated sexual assault by penetration, aggravated sexual assault by contact, or neither and did not authorize the jury to find Wong guilty of both counts. *See Crocker v. State*, 573 S.W.2d 190, 197 (Tex. Crim. App. 1978) (explaining that if jury charge contains instructions for alternative counts but only authorizes conviction on one count, "[n]o double jeopardy problems are extant . . . because the jury returns either an acquittal or a verdict of guilty on one count only"). Wong "has not been subjected to a second prosecution after an acquittal or after a conviction," and he has not been "subjected to multiple punishments for the same offense because he was only punished once when the district court imposed its sentence." *See Williams*, 2018 WL 3451635, at *10; *see Hernandez v. State*, 556 S.W.3d 308, 330-31 (Tex. Crim. App. 2017) (on reh'g) (observing that "there is no multiple-punishment problem" where defendant "was convicted of only one offense" but was charged with multiple crimes based on same conduct). Accordingly, we cannot agree with Wong's suggestion that the jury's failure to convict him of the penetrative

misconduct prohibits this Court from considering the evidence that might pertain to both the penetrative misconduct and the inappropriate contact when conducting a sufficiency review.

Although Wong correctly points out that the jury did not find him guilty of aggravated sexual assault by penetration but did find him guilty of aggravated sexual assault by contact based on the same evidence, "the law does not bar inconsistent verdicts," *Guthrie-Nail v. State*, 506 S.W.3d 1, 6 (Tex. Crim. App. 2015), and "[i]nconsistent verdicts in prosecutions based on the same evidence do not require a reversal on the ground of legal insufficiency," *Ramirez v. State*, No. 04-19-00074—00075-CR, 2020 WL 214776, at *2 (Tex. App.—San Antonio Jan. 15, 2020, no pet. h.) (mem. op., not designated for publication) (quoting *Moore v. State*, No. 04-12-00490-CR, 2013 WL 3148650, at *1 (Tex. App.—San Antonio June 19, 2013, pet. ref'd) (mem. op., not designated for publication). In other words, "if a defendant is acquitted of one count and convicted of another based on the same evidence in a single trial, the defendant cannot rely on the inconsistent verdicts to attack the defendant's conviction." *Hernandez*, 556 S.W.3d at 331. An appellate court's inquiry "is limited solely determining whether there is sufficient evidence to support the charge on which a conviction is returned." *Felder v. State*, No. 03-13-00707-CR, 2014 WL 7475237, at *4 (Tex. App.—Austin Dec. 19, 2014, no pet.) (mem. op., not designated for publication). "[E]ach count must stand or fall on its own, and when analyzing the sufficiency of the evidence of a particular conviction, we consider *all* of the evidence admitted at trial." *Hernandez*, 556 S.W.3d at 331.

Regarding the evidence at trial, evidence was presented establishing that Wong was twenty-four years old and that Child was eleven years old at the time of the alleged offense. Further, Cousin testified that she observed Wong moving up and down on top of Child while he was naked, and Cousin also stated that it appeared that Wong was having sexual intercourse with

10

Child. Moreover, Mother testified that Child informed her approximately 36 hours after the alleged assault that Wong "forced his thing" inside Child even though Child told him to stop and that Wong kissed Child on her neck. Additionally, Mother related that Wong told her over the phone after the alleged offense that he was sorry for his actions.[2]

The sexual-assault-nurse examiner testified that Child stated during the exam that Wong put his "thing" inside her, that Child pointed to her genitals when asked to clarify what she meant by Wong's "thing," and that Wong kissed her neck. *Cf. Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (noting that courts "cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults" and explaining that record "reflected that the child used anatomically correct dolls to demonstrate what she meant" when she used word "this" to describe defendant's actions); *Torres v. State*, 424 S.W.3d 245, 252-53 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (determining that even though child victim used "unsophisticated terminology" when describing assault, "she offered enough details to support the conviction").

Testing performed on swabs taken from Child's neck revealed the presence of a DNA profile that was consistent with a mixture of Child's and Wong's DNA, and Wong could not be excluded as a contributor to the profile. In her testimony, Child explained that Wong got on top of her on the night in question, that her clothes were removed, that Wong was moving while he was on top of her, that his body was touching her body, that his penis touched her

---

[2] To the extent that Wong argues in this issue that the portion of Mother's testimony regarding Child's outcry is unreliable, we note that appellate courts must consider "*all* the evidence admitted at trial before deciding whether there was sufficient evidence to prove the element of the offense in dispute." *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990) (determining that appellate court erred by failing to consider outcry testimony in sufficiency review after first determining that outcry was unreliable).

vagina, that Wong hurt her vagina, that "the sex" hurt her, that sex involves body parts from a man and a woman, and that Wong raped her. *Cf.* Tex. Code Crim. Proc. art. 38.07 (stating that conviction for aggravated sexual assault of child "is supportable on the uncorroborated testimony of" child victim); *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (determining that child victim's testimony "is alone sufficient to support appellant's conviction for sexual assault of a child").

Given our standard of review and in light of the record before this Court as well as the reasonable inferences that can be made from that record, we must conclude that a rational jury could have concluded that Wong intentionally or knowingly caused his sexual organ to contact Child's sexual organ. *See* Tex. Penal Code § 22.021(a). To the extent that Wong suggests that the evidence could also support conflicting inferences, we must conclude that the jury resolved those inconsistencies in favor of Wong's conviction and defer to that determination. Accordingly, we conclude that the evidence was legally sufficient to support Wong's conviction for aggravated sexual assault and overrule his first issue on appeal.

**Outcry Testimony**

In his second issue on appeal, Wong contends that the district court erred by admitting outcry testimony from Mother. *See* Tex. Code Crim. Proc. art. 38.072 (setting out procedure for admission of outcry testimony). Although Wong acknowledges that a hearing was held outside the presence of the jury regarding the admissibility of the outcry testimony as required by the Code of Criminal Procedure, he contends that the district court erred by concluding that the outcry testimony was reliable. *See id.* art. 38.072(b)(2); *see also Gonzales v. State*, 477 S.W.3d 475, 479 (Tex. App.—Fort Worth 2015, pet. ref'd) (listing nonexhaustive

factors for trial courts to consider when deciding reliability of outcry statement). As support, Wong points to testimony given by Mother during the 38.072 hearing in which she related that Child repeatedly denied that anything inappropriate happened and that Child only made an outcry of sexual assault after Mother "kept asking" Child what happened. Further, Wong notes that when the district court found the outcry to be "sufficiently reliable for these purposes," it also commented that "there's some question there." For these reasons, Wong urges that the "circumstances of that outcry statement . . . warrant[ed] its exclusion as unreliable."[3]

Even if the district court erred by admitting the outcry testimony, we would be unable to conclude that Wong was harmed by the admission of that evidence. The erroneous admission of evidence, including outcry testimony, is considered a non-constitutional error. *See West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd). For non-constitutional

---

[3] In his brief, Wong also mentions that the district court made its decision regarding the admissibility of the outcry testimony without allowing him the opportunity to cross-examine Mother. But Wong did not object to the district court's decision to make its ruling before he was allowed to cross-examine Mother. *Cf. Lopez v. State*, 200 S.W.3d 246, 256 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (explaining that defendant "waived appellate review" of issue asserting that trial court erred by limiting his cross-examination of witness). At the 38.072 hearing, Wong did assert that admitting the outcry testimony would violate "the confrontation clause." To the extent that Wong's brief can be read as presenting a confrontation-clause issue, we note that Child was called to testify as a witness during the trial and that Wong cross-examined her about her outcry. Accordingly, even if Wong presented a confrontation claim on appeal, we would be unable to conclude that any confrontation violation occurred. *See Beckham v. State*, 29 S.W.3d 148, 153 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (finding "no violation of the confrontation clause" regarding admission of outcry testimony where "appellant had an opportunity to cross-examine A.B. on her outcry statement"); *Fetterolf v. State*, 782 S.W.2d 927, 931 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (determining that admission of outcry testimony under article 38.072 did not deprive defendant of right to confront witnesses where "the complainant . . . provided live testimony at trial on direct examination and she was cross-examined at length by appellant's defense counsel"); *Rodriguez v. State*, 762 S.W.2d 727, 731 (Tex. App.—San Antonio 1988, pet. dism'd) (finding no confrontation violation related to admission of outcry testimony where "complainant was called to testify by the State, and appellant, in fact, cross-examined the child").

errors in criminal cases, the error must be disregarded unless it affected the defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). A substantial right is not affected "when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect." *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). If the same or similar evidence is admitted during another portion of the trial without objection, "the improper admission of the evidence will not constitute reversible error." *West*, 121 S.W.3d at 104.[4]

---

[4] On appeal, Wong suggests that the admission of the outcry testimony in this case was constitutional error and subject to the harm analysis under Rule 44.2(a) of the Rules of Appellate Procedure because the admission of the unreliable evidence deprived him of his right to due process. However, during the article 38.072 hearing, Wong did not make any due-process objections regarding the outcry evidence and instead urged that the admission was improper because it was hearsay and because, as set out previously, it violated his right to confrontation. *See Cooke v. State*, Nos. 12-03-00183—00184-CR, 2004 WL 1253306, at *2 (Tex. App.—Tyler June 9, 2004, no pet.) (mem. op., not designated for publication) (concluding that objection on basis that outcry "was not reliable" due to mother's questioning of victim "did not preserve error on constitutional or due process grounds"); *see also Holland v. State*, 802 S.W.2d 696, 699 (Tex. Crim. App. 1991) (observing that "it is incumbent upon the accused to object on the basis of . . . due process" when challenging admission of outcry testimony under article 38.072). Although Wong did present arguments regarding his due-process rights during the hearing on his motion for new trial, he did not present these arguments during the article 38.072 hearing or during the trial. *See* Tex. R. App. P. 33.1(a); *see also Colone v. State*, 573 S.W.3d 249, 260 (Tex. Crim. App. 2019) (explaining that "[a] defendant may not raise a matter for the first time in a motion for new trial if he had the opportunity to raise it at trial"); *Alexander v. State*, 137 S.W.3d 127, 131 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (determining that presenting due-process claims for first time in motion for new trial "forfeited any error premised on those grounds" because defendant did not "make a timely, specific objection, at the earliest opportunity and obtain an adverse ruling"); *Beckham*, 29 S.W.3d at 153 (noting that there may be circumstances in which admission of outcry statement could deprive defendant of due process but explaining that "a defendant must make a proper and timely objection at trial to preserve this kind of claim for appeal" and that failure "to object when the evidence is offered waives the complaint on appeal"). In any event, we have not been pointed to any authority standing for the proposition that any alleged error in the admission of outcry evidence under article 38.072 in the circumstances present here "is 'constitutional error' subject to a more stringent harm analysis under the Texas Rules of Appellate Procedure." *See Citizen v. State*, No. 13-14-00379-CR, 2015 WL 513367, at *9 n.12 (Tex. App.—Corpus Christi Feb. 5, 2015, no pet.) (mem. op., not designated for publication).

During the trial, Mother testified that Child made an outcry of sexual abuse and told mom that Wong "forced his thing in" her even though she told him to stop, that Wong kissed her on her neck, that she tried to push Wong away, that Wong forced himself on her, and that Wong threatened to hurt Mother and her if Child told anyone. Similarly, the sexual-assault-nurse examiner testified that Child told her that Wong kissed her on her neck and "put his thing inside of" her, and Child testified that Wong got on top of her while she was naked, that Wong moved his body while he was on top of her, that his penis touched her vagina, that "the sex" hurt her, that she did not want Wong to engage in that behavior, and that Wong raped her.

Because Mother's testimony regarding Child's outcry was similar to the testimony that Child and the nurse examiner provided, any potential error from the admission of the outcry testimony was harmless. *See Moody v. State*, 543 S.W.3d 309, 314 (Tex. App.—Eastland 2017, pet. ref'd) (deciding that any error in admission of outcry testimony was harmless where "[t]he victim testified before the jury without objection to the same facts contained in the outcry"); *Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (determining that erroneous admission of outcry testimony was harmless where child "testified in detail about the abuse" and provided "the same testimony [the outcry witness] gave regarding the abuse"); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (concluding that any error from admission of outcry testimony was harmless because victim testified at trial that defendant sexually abused her and because testimony regarding statements that victim made to nurse was also presented).

Accordingly, we overrule Wong's second issue on appeal.

15

## CONCLUSION

Having overruled both of Wong's issues on appeal, we affirm the district court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   March 27, 2020

Do Not Publish

16